C. H. DeFord, *as Sheriff of Greenwood County*, v. W. H. Orvis.

Goods, *Seized and Sold by Sheriff—Action for Damages—Error in Excluding Evidence.* On the trial of an action against a sheriff for the value of a stock of goods that was seized under an attachment and sold, by a person who claimed to have bought the goods from an insolvent debtor prior to the levy of attachment, and to have paid for the same by the execution and delivery to the insolvent debtor of two notes signed by himself, one for $1,100, and the other for $1,200, and that the $1,100 note was delivered to parties who had indorsed for the insolvent debtor, as collateral security for such indorsements, it is error for the trial court, when one of such persons is on the witness stand, to refuse to permit the attorney for the sheriff to ask him whether the note was paid, and how paid, and by whom paid. It was also error to refuse to make the purchaser answer questions as to whether or not there was not an understanding between himself and the insolvent debtor, that if he lost this suit he would not have to pay the $1,200 note; and as to whether the $1,200 note was paid, or was to be paid.

*Error from Greenwood District Court.*

Action brought by *Orvis* against *DeFord*, as sheriff of Greenwood county, to recover the value of a stock of goods seized and sold by defendant to satisfy certain judgments against H. Malloy. Trial at the May term, 1886; verdict and judgment for the plaintiff for $2,185.66. The defendant brings the case here. The material facts appear in the opinion.

*D. B. Fuller*, for plaintiff in error.

*S. S. Kirkpatrick*, for defendant in error.

Opinion by Simpson, C.: One H. Malloy was engaged in the mercantile business at Severy, Greenwood county, and was largely indebted to wholesale merchants and others, to an amount in excess of his ability to pay. In January, 1885, he sold out his stock of goods to a brother-in-law named W. H. Orvis for a lump sum of $2,500, no invoice being taken. Orvis paid for the goods as follows: He claimed that Malloy owed him $200, money loaned to Malloy's wife in Canada—this was to be considered as a cash payment on the stock; a note was executed for $1,100, payable in six months, without interest; and $1,200, payable in one year. These notes were signed by Orvis alone, no security being demanded or given. At the same time, Orvis purchased the store building in which the goods were kept, and in payment thereof gave his note secured by a second mortgage for $450, subject to a first mortgage for $650. The first note was turned over to Sowders & Dennis, in pursuance of an arrangement between Orvis and Malloy. The reason for the transfer of the note to Sowders & Dennis, was to secure them for indorsements made by them to wholesale houses, for Malloy. Dennis is a brother-in-law of Orvis & Malloy. It is claimed by Orvis that this note was paid by him to Dennis about the time it became due. Orvis took possession of the store-room and stock of goods, and commenced selling them, and realized about $600 out of the sales, when in a few days thereafter the goods were attached by the creditors of Malloy, and sold out by the sheriff of Greenwood county. In March, 1885, Orvis brought this action against C. H. DeFord, the sheriff of Greenwood county, for damages for the unlawful seizure and sale of the goods. The case was tried at the May term, 1886, and resulted in a judgment in favor of Orvis for the sum of $2,185.66 and costs. The case was tried by a jury, and a general verdict rendered, there being no special find-

ings of fact.  A motion for a new trial was made, overruled, and excepted to.  The petition in error complains of many rulings made by the trial court, in the admission and exclusion of evidence, and in giving and refusing certain instructions.  The alleged error about instructions is not insisted upon in the brief of the plaintiff in error, and we shall comment only upon the points discussed in the brief.

The first serious objection that demands notice is, that the court permitted the plaintiff below to detail to the jury the conversations he had with other persons before he made the purchase, as to its advisability.  These conversations were had with the brother-in-law Dennis; with one Huff, who had worked in the store occasionally for Malloy; and with Sowders.  These conversations were objected to by the defendant in error, but were allowed to go to the jury.  The defendant in error then made a motion to strike this evidence out, and withdraw it from the jury, and the motion was overruled.  These conversations were offered and admitted to show that Orvis had acted in good faith in the purchase of the goods; that he took the matter under advisement; that he consulted with persons whom he believed had more knowledge of the condition, and were better qualified to judge of the value of the goods than he was; to show that it was not a sudden, secret sale and purchase, but that there was delay, negotiation, and publicity attending the transaction.  We are not furnished with authority on this question on either side, but each very emphatically asserts his own belief about the admissibility of this evidence. Under our practice the mouth of a party to the action is open, and he can be examined and cross-examined as to his motives, and his condition of mind with reference to the particular transaction in question.  His acts are the best test of his mental condition.  If in this case it had been shown that he bought out Malloy hurriedly and secretly, and without consultation with anyone better acquainted with the value of goods of this character, an inference of bad faith would arise. It would seem that any fact that would justify good faith on his part ought to be admissible.  If he had made inquiries in

the neighborhood, and had been told by everybody of whom he had inquired that Malloy was insolvent, he would have been bound by the knowledge so received. Should he not be allowed to show that he had inquired of everybody who had opportunities of knowing the financial condition of Malloy, and all assured him that they believed him to be solvent? It has often been held that to prove cognizance of a man's insolvency, the talk of the neighborhood in which he does business, showing that it was a matter of common reputation in the business community that he was insolvent, is admissible. (Wharton, Law Evi. 253, and authorities cited in foot-note.) This rule proceeds from a hypothesis that while general reputation is not admissible to establish any objective fact, it is to be received, as one among many cumulative modes, to show the condition of mind as to a particular transaction. If the fact of insolvency is notorious in the neighborhood, the very great probabilities are that this person has heard it talked about, and consequently, if he deals with the insolvent, he does so with the knowledge that he is regarded in the community as an insolvent. Of course he may justify his dealings by a statement that he had not heard the subject mentioned, but it is a circumstance to be taken into consideration in determining the question of good faith.

In this case we are inclined to hold, that as every act of the defendant in error that tends to show bad faith on his part in purchasing these goods can be proved, they may be met by showing all his acts, even to the extent of inquiries of third persons, to show his good faith. But we see no reason why what third persons have said in response to such inquiries should, under any circumstances, be permitted to go to the jury. But the fact that inquiries were made, counsel, advice and opinions solicited, tends to show good faith, _i. e._, absence of concealment and haste, and what was done in this respect is admissible.

The statements made by Huff, Dennis and others to Orvis, ought not to have been admitted, as they are hearsay, and under any or all rules of evidence inadmissible. They may

tend to prove good faith, but are not competent for any purpose. (*Weybrich v. Harris*, 31 Kas. 92.) Of course it is difficult for us to tell the exact effect produced on the jury by this admission. Many or most of the facts testified to by the defendant in error as statements of Dennis, Huff and Sowders, were subsequently during the trial testified to directly by them. We have many serious doubts about these statements having any prejudicial effect on the jury. Admission of immaterial evidence is not sufficient to reverse. (*Shepard v. Allen*, 16 Kas. 182; *Palmer v. Meiners*, 17 id. 478; *Greer v. Higgins*, 20 id. 420; *Moon v. Helfer*, 25 id. 139.)

Orvis when on the witness stand testified to a conversation between Malloy and himself after the attachments were levied, tending to show that as soon as he discovered that Malloy was insolvent he denounced him as a swindler, etc. On cross-examination he was asked many questions with reference to this conversation, which under objection were ruled out by the court. The language used by the witness was not choice, but this was no reason for the refusal to permit a most searching cross-examination. The rule established in this state is, that a great latitude should be allowed in cross-examination, and this rule applies in all its vigor in cases of this character. (*Fields v. Davis*, 27 Kas. 400; *C. B. U. P. Rld. Co. v. Andrews*, 30 id. 590.)

Sowders was called as a witness for the plaintiff below, and on cross-examination was asked in relation to the payment of the $1,100 held by him and Dennis as collateral security for their indorsements for Malloy. The court sustained an objection to many questions seeking to get information on this subject. He had testified in chief about the delivery of the note to him, and the purpose of the delivery, and we think the defendant in error had the right to know whether it had been paid or not, for several very important reasons: First, to find out whether the transaction was in good faith or not, by ascertaining whether the note was paid, and if so, by whom — Orvis or Malloy. If paid by Orvis when due, or if paid by him at any time, it would be a

*Error in excluding evidence.*

circumstance strongly indicative of his good faith in the purchase; but if paid by Malloy it would tend to show that the sale to Orvis was colorable. We think that under the peculiar circumstances attending the sale of the stock of goods by Malloy to Orvis, that the utmost latitude ought to have been allowed in the cross-examination of all these witnesses. Sowders ought to have been compelled to answer all questions about the collection of the book accounts turned over by Malloy to Sowders and Dennis, to indemnify them against these same indorsements. The same latitude ought to have been allowed in this matter as about the note. So of the conversation Orvis had in Canada with Malloy about the $1,200 note. He was asked on cross-examination if it was not true that this note had not been paid, and would not be, if he lost this suit. This was objected to, and the court sustained the objection.

*Great latitude to be allowed in cross-examination.*

We think there was material error in all these rulings, and because of them we recommend a reversal of the judgment, and that the cause be remanded with instructions to grant a new trial.

By the Court: It is so ordered.

HORTON, C. J.: The record shows that H. Malloy was engaged in the dry-goods business at Severy, in Greenwood county; that he was largely indebted to different wholesale houses for goods, greatly in excess of his ability to pay, and was being pressed by his creditors, and, being upon the eve of bankruptcy, sold his entire stock of goods to W. H. Orvis for $2,500. No invoice was made, but the goods were sold in lump for that sum. In the payment for these goods, an old indebtedness of $200, advanced by Orvis to Mrs. Malloy while in Canada, was deducted, and the remainder was paid by two notes, one of $1,100, payable in six months, without interest, and one for $1,200, payable in one year, signed by Orvis alone, and without security. At the same time, Orvis purchased the store building in which the goods were on sale, and in payment gave his note, secured by a second mortgage

upon the building, for $450, subject to a mortgage of $650, already on the property. This was all the property Malloy had subject to the payment of his debts, and if all of this property had been honestly applied to their payment, it would still have left a large indebtedness unpaid.

Orvis recovered judgment for $2,185.66 for the goods which he alleged he purchased of Malloy, and which the creditors of Malloy levied upon to pay their claims. It is conceded that Malloy was insolvent at the time that Orvis purchased his goods.

I have some doubt whether the refusal of the trial court to permit the cross-examination concerning the payment of the $1,100 note was material error. It appears from the record that Orvis testified that he paid that note, and upon the witness stand he produced the note which had been executed by him, for the inspection of all the parties. I think the court committed error in rejecting the evidence concerning the $1,200 note referred to. Orvis should have been permitted to answer among other questions the following: "Q. Have you seen the $1,200 note since you signed it, at any time?" "Q. Have you paid any portion of that note?" "Q. Do you know who holds that note at this time?" And also the other questions referred to in the opinion.

I base my concurrence in the reversal of the judgment of the trial court principally, however, upon the ground that Orvis was a *bona fide* purchaser of the stock to the amount of $1,100 only. The note for that amount was delivered to Sowders & Dennis, who were indorsers for Malloy, at the request of the latter. The other notes, one for $1,200, and the one for $450, have not been paid by Orvis, and there is nothing in the record showing conclusively that these were negotiable notes. Orvis testified that these notes were payable to Malloy —not to his order, or bearer.

At the time of the trial, the $1,200 note was overdue, and had not yet been paid. The evidence in the record leads to the belief that at the time of the trial these notes were in the hands of Malloy, who now resides in Canada. Even if the notes were negotiable, if they have never passed out of

the hands of Malloy to a *bona fide* holder, then Orvis has a good defense to them. "The protection to which a *bona fide* purchaser without notice is entitled, extends only to money which has been actually paid, or to securities or property which have been actually appropriated by way of payment before notice, and notice before actual payment of all the purchase-money is binding as to the consideration not paid, in the same manner as notice had before purchase." In other words, to entitle a person to the character of a *bona fide* purchaser without notice, he must have acquired the legal title and have actually paid the purchase-money or parted with something of value by way of payment before receiving notice. And even if notice is only after a payment of a part of the purchase-money, the purchaser is entitled to reimbursement only for the money paid. (*Bush v. Collins*, 35 Kas. 535; *Dodson v. Cooper*, 37 id. 346; *Green v. Green*, 41 id. 472.) The court nowhere in its instructions stated that Orvis could not be a *bona fide* purchaser as to the $1,200 and $450 notes not paid, unless those notes were negotiable, and had passed out of the hands of Malloy before due. These matters should have been commented upon and fully considered in the instructions to the jury.

Again, it appears from the testimony that within two or three days after Orvis made his alleged purchase of the stock of goods, and executed his notes, several attachments were levied upon the stock, and he had then full knowledge of the insolvency and fraud of Malloy. At this time the $1,200 and $450 notes ·were in the hands of Malloy to the knowledge of Orvis. If he had been prudent and diligent he could have prevented the payment of these two notes by proper legal proceedings against Malloy, who had obtained them by fraud. (*Bush v. Collins*, supra.) I also think the statements of Huff, Dennis and others to Orvis, as stated in the opinion, were hearsay only, and therefore inadmissible. For the above reasons I concur in the reversal of the judgment, and the order for a new trial of the cause.

VALENTINE, J.: With some doubts, I concur.

JOHNSTON, J.: I am of opinion that the grounds upon which the judgment of reversal is based are insufficient to overthrow the verdict of the jury and the approving judgment of the district court. The facts in the case, including those which tended to show that Orvis did not purchase in good faith, as well as his explanations and testimony offered to prove that he was a *bona fide* purchaser, were fully developed before and fairly submitted to the jury, and the jury found the transaction to be an honest one so far as Orvis was concerned. The statements of Huff, Dennis and Sowders, related by Orvis, were hearsay testimony, but, as conceded in the prevailing opinion, these same parties were witnesses in the case, and gave directly and substantially the same evidence before the jury; hence no prejudice could have resulted to plaintiff in error — and only prejudicial error affords ground for reversal.

There is just as little reason, in my opinion, to complain of the limits placed on the cross-examination. In this class of cases great latitude should be given, but a reading of the entire record satisfies me that the court was very indulgent to the plaintiff in error, and permitted a full and searching cross-examination. Indeed, in some instances it was extended beyond reasonable limits, and it will be found that the objections made were mostly to needless repetitions, or to matters which were immaterial and foreign to the controversy.

In respect to the $1,100 note that has been mentioned, it was not a subject of dispute that it had been paid. The manner of payment, and the fact that Orvis had counseled with his attorney as to the propriety of paying before the payment was made, were advanced as a reason that the transaction was not *bona fide*. This note was paid in two installments and produced in court, and the facts concerning it were fully brought out. In my opinion, a further examination of Sowders on this subject was useless, and the exclusion of further testimony was not substantial error. The refusal of the questions in regard to the payment of the $1,200 note cannot be preju-

dicial, because it was not claimed by anyone that it had been paid. All agree that the note was due and unpaid at the time of the trial; in fact, it was shown that Orvis, when the goods were taken from him, looked for an escape from liability on this note. Although an objection was first sustained to an inquiry as to whether there was an understanding between Orvis and Malloy that the payment of the note depended upon the result of this litigation, the question was subsequently allowed and full inquiry made. I am unable to find any testimony in the record to show that this note was non-negotiable, or that it was in the hands of Malloy when it became due. One of the notes was transferred, and counsel speak of them in the argument as negotiable notes, and the statement is unchallenged. If the notes were negotiable and had passed beyond the control of Malloy before due, so that Orvis could not defeat their collection, the rule of *Bush v. Collins*, 35 Kas. 535, which has been invoked, would not apply. The verdict being for Orvis, the presumptions are in his favor. No special instruction on this phase of the case was asked, and hence no error could be predicated on the omission. The court did state to the jury that the right of recovery of Orvis must rest on good faith and a valuable and adequate consideration. If more definite instructions were desired they should have been requested.

Being convinced that no material errors were committed, I feel compelled to dissent from the judgment of reversal.