JONATHAN HUNT, *et al.*, v. W. B. SPENCER.

1. TRIAL, IN EQUITY CASES; *Submitting Questions to Jury; Findings of Court.* In a case in which a jury is not a matter of right, the court may submit certain questions of fact to a jury, and itself thereafter, from the same testimony, make special findings upon matters not submitted to the jury, and base its decree upon both the answers of the jury and its own special findings.

2. VOLUNTARY CONVEYANCE; *Husband's Use of Wife's Money; Rights of Creditors.* From the mere fact that upon the sale of a piece of property belonging to the wife, the husband received the price, it does not neces-

sarily follow that a debt of the latter to the former was intended to be or was created. And where upon such a sale the husband, with the knowledge and assent of the wife, received the price, mingled it with money of his own, and invested the joint funds in a business enterprise in his own name and conducted solely by himself, and this without any account or statement of indebtedness, or any agreement or understanding that the money should be treated as a loan, or afterward returned to her, and such business enterprise proved a failure, and thereafter in another community he entered into business in his own name and accumulated some property, *held*, that a conveyance to his children of the property thus accumulated, made some eight or nine years after the receipt of the money from the sale of the wife's property, and some five or six years after the death of the wife, could not be sustained as against recent and existing creditors as a payment of a debt created by the receipt of such money, but must be regarded as a voluntary conveyance.

3. ———— A voluntary conveyance can be sustained as against existing creditors, only when under all the circumstances of the case the property retained by the grantor furnishes reasonable and adequate provision for the discharge of his debts.

### *Error from Cherokee District Court.*

ON the 2d of December 1874, *Hunt* conveyed by general warranty deed certain property situated in the city of Columbus, to *Martha Hunt*, his daughter. On the 5th of said December *Spencer* commenced an action against *Hunt*, and thereafter recovered a judgment against him for $950, and costs. An execution was issued on such judgment, and returned "no goods." Thereupon *Spencer* brought this action against said *Jonathan Hunt* and *Martha Hunt*, to set aside the conveyance between them of 2d December 1874, as fraudulent and void as to him, and to subject the property covered by the deed to the payment of his judgment. This action was tried at the January Term 1877 of the district court. The facts, and the proceedings, are fully stated in the opinion, *infra*. A decree was made and entered in favor of *Spencer*, as prayed for, and the defendants bring the case here.

*John N. Ritter*, and *W. H. Whiteman*, for plaintiffs in error, contended that it was error to refuse a jury to try the whole issue joined. They also contended, that having submitted

certain questions of fact to a jury, the court erred in finding
other and additional facts. They contended further, that the
indebtedness of Hunt to his wife, at the date of her decease,
was a sufficient consideration to support the deed from Hunt
to his co-defendant, (the daughter of himself and his deceased
wife;) that there was no fraud; that he had other property
sufficient to pay his debts, etc.

*Hallowell & Anderson*, for defendant in error, maintained
that the transfer of property by an insolvent debtor, without
consideration, to a near relative, is one of the strongest badges
of fraud, and cited Bump, Fraud. Cont. 96, 275, 292. No
consideration passed from the daughter, except the pretended
indebtedness of Hunt to his wife, (who had died several years
before.) The deed was in fraud of the rights of Hunt's cred-
itors, and is void. (Bump, 80.) Mrs. Hunt, in permitting
her husband to take take two thousand dollars of her prop-
erty, commingle it with his own means and use it generally
in his own business without keeping any account between
them of it, and there being no agreement that he should re-
pay it, lost all claim upon him for the money, and the same
became his and was liable for his debts.

The opinion of the court was delivered by

BREWER, J.: This was an action to set aside a conveyance,
as fraudulent. A decree was rendered as prayed for, and this
proceeding in error is brought to set aside that decree.

A motion was made in this court to strike out the tran-
script, and dismiss the petition in error. This motion, as an
entirety, was overruled, because the pleadings and journal
entries were properly authenticated. But so far as it attacks
the so-called "bill of exceptions, or case-made," it must be
sustained. That has no validity. The motion for a new
trial was overruled on February 12th, at the January term,
and sixty days given to make a case. On April 7th, there
was filed in the clerk's office a paper styled in the caption, a
"bill of exceptions," and in the certificate of the judge, a

"bill of exceptions, or case-made." It was not a case-made, because not complete in itself, and only purporting to include the testimony; because it does not show any service on the opposite party, any appearance or suggestions of amendment by him, and was signed in advance of time. It was not a valid bill of exceptions, because not signed and filed during the term. *Shumaker v. O'Brien*, 19 Kas. 476; *Transportation Co. v. Palmer*, 19 Kas. 471. We may therefore dismiss from our consideration all matters alleging error in the admission or exclusion of testimony, and the question of the sufficiency of the testimony to support the findings.

Upon the pleadings and journal entries some important questions however arise. This was not a case in which a jury was a matter of right. Nevertheless, one was called "for the purpose of passing upon certain ques-1. Trial, in equity actions, jury tions to be submitted to them." They did an-not a matter swer all the questions submitted to them, or at of right. least all that the record shows were submitted. It would seem from the numbering of the questions, that there were three more than those on the record, but whether they were withdrawn by counsel or refused submission by the court, or what they were, is not disclosed. After the jury had answered these questions, no one of which called for anything like a general finding upon the issues, the court upon a motion for judgment found certain facts, and upon the answers and findings rendered a decree in favor of the plaintiff. And the contention of counsel is, that in this the court erred — that "the whole and sole duty of the court was to draw from their findings his conclusion of law.". This is a mistake. The record shows no submission of the entire case to the jury, but only of "certain questions." And the court has the right in an action like this to submit part of a case to a jury, and itself find as to the remainder. We see no conflict as to any substantial matter between the findings of the court and the answers of the jury. Some seem to cover the same matter, and may therefore have been unnecessary; but most are upon

points and facts untouched by the jury. *Carlin v. Donegan*, 15 Kas. 495.

We come therefore to the main question, and that is, whether upon the facts as settled by the jury and the court the decree was proper.    These facts are substantially as follows: The conveyance was from father to daughter, made

Statement of facts.

after the former's liability to the plaintiff had become fixed, and three days before suit thereon. No money was paid; and the only consideration claimed was, that the father had received from his wife money which he had never paid back to her, and which upon her death descended to the daughter, and was paid to her by this conveyance.    Some eight or nine years prior, the wife had sold a certain hotel property in Atchison; the price, $2,000, was received by the husband, and used by him in the management and conduct of his business, with her assent, and without any account or statement of indebtedness, or agreement or understanding that it should be treated as a loan, or afterward returned to her.    He removed with his family to Alabama, engaged in business, was unsuccessful, and returned to Kansas "much broken in pecuniary circumstances."    Here he again engaged in business with some success.    Some five or six years prior to the conveyance, his wife died, leaving six children surviving.    The same day that he made this conveyance, or the day before, he deeded other property of which he held the legal title to other children.    This left him his homestead, and a half interest in a drug store, valued at $850, and some improvements upon a claim, the title to which was in a railroad company.    He shortly after sold his interest in the drug store, but used no part of the proceeds in paying this indebtedness.    The jury found that at the time of the conveyance he had personal or other property sufficient to pay plaintiff's claim, and subject to be appropriated therefor.    They did not specify the property he possessed, but the court did, as above.    The claim of plaintiff was between $950 and $1,000.    We have not given the facts in detail, but simply the outlines, so that the character

of the questions involved may be seen. The jury answered twenty-four questions, and the court made seventeen special findings.

The contention of counsel for plaintiff in error is, that the conveyance was not fraudulent, because in discharge of a subsisting *bona fide* obligation, and also because, notwithstanding

2. Voluntary conveyance. it, the grantor had property remaining sufficient to discharge his indebtedness. Upon the first claim we remark, that there is not enough in the facts as found to compel the conclusion of an existing indebtedness. If A. places money in B.'s hands, and the latter with A.'s knowledge mingles it with his own funds and uses the joint amount in a business enterprise, there may be either an indebtedness of B. to A. for the specific amount, and interest, or a gift from A. to B., or there may be a joint investment with profits and losses to be shared. If the latter, and the entire investment be lost, it is A.'s loss as well as B.'s, and the former has no legal claim upon the latter. This is true even where the parties are strangers except in the single transaction. And whether the transaction is to be deemed a loan, a gift, or a partnership, will depend upon the understanding and agreement of the parties, and be determined by

Husband's use of wife's property. the circumstances attending it. Now the facts as found in this case exclude the idea of any loan. They would tend strongly in the same direction if the parties were strangers, and not husband and wife. There was no account or statement of indebtedness, no agreement or understanding that it should be treated as a loan, or ever repaid. If the parties did not consider it a loan, why should the law be now invoked to so regard it? It is evident that the wife permitted the husband to take and use this money, not with the idea of his having a separate estate and separate interests, and of making a loan to him, but regarding her interests and his as one, and in furtherance of that single interest, and to promote the common good of the family. The law still regards husband and wife as one, and while it permits it, does not compel separate estates. There is nothing

to prevent the wife from using her separate property for the benefit of the family, or from giving it to her husband. When therefore husband and wife mingle funds derived from their separate property, and use them as a single fund in the custody and control of one of them, without agreement or understanding of loan from either to the other, the law will regard the transaction as involving a gift, rather than a loan. True, it may imply a loan, and a promise of repayment, even where there was no express agreement; but the circumstances must be clearer and stronger than where the transaction is between man and man. Having received a gift, she may return the gift; but he returns it as a gift, and not as payment of a debt. It is a voluntary act on his part; and as it affects creditors, must be treated as a purely voluntary act.

With reference to the second claim, we remark, that the answers returned by the jury might leave the matter uncertain, for they give no figures; but the facts as found by the court, showing specifically what property the grantor retained, and of what value, are sufficient to sustain the conclusion.

3. When voluntary conveyance is void as to creditors. A voluntary conveyance will not be upheld simply because it is shown that the grantor retained property of value just about equal to his indebtedness. It must appear that the property retained furnished reasonable provision for the satisfaction of the debts, taking into account its accessibility, the expenses of sale, and all the circumstances of the case. In Bump on Fraudulent Conveyances, p. 296, it is said, that, "to rebut the presumption of fraud, the proof must be clear and satisfactory. If there is a reasonable doubt of the adequacy of the grantor's means, then the voluntary conveyance must fall, for the effect of it is to delay and hinder his creditors. It is incumbent on the donee to show a case not only without taints, but free from suspicion. The condition of the donor must be shown to be such that a prudent man, with an honest purpose, and a due regard to the rights of his creditors, could have made the gift. This is to be ascertained not merely by taking an account of the grantor's debts and credits, and striking a bal-

ance between them, but by an examination of the general state of his affairs." And again, on the next page: "A scanty provision for the payment of debts, will not for that reason render the conveyance valid. Property worth $7,250 has been deemed insufficient to meet debts amounting to $6,848, (citing *Black v. Sander*, 1 Jones, N. C. 67,) and property worth $48,000 has been held not to be ample to meet debts to the amount of $42,000," (citing *Crumbaugh v. Kagler*, 2 Ohio St. 373; *Miller v. Wilson*, 15 Ohio St. 108.) In the case from 2 Ohio St., it is held, that "such a gift is never upheld unless property is retained clearly and beyond doubt sufficient to pay all the donor's debts." And a number of authorities are cited in support of the decision. See also, *Churchill v. Wells*, 7 Cold. (Tenn.) 364. These authorities are clear and decisive. And no other rule would protect creditors. In this very case, the execution was, notwithstanding the finding of the jury as to Hunt's means, returned *nulla bona*. Hunt told the sheriff while he had the execution that he had no means; and if now he could uphold his voluntary conveyance by proof that he had some personal property of about the amount of the debt which could have been seized, the creditor may whistle for his debt. The law will uphold voluntary conveyances only when they cast no reasonable barrier in the way of creditors. A man may give away whatever he sees fit, provided he first pay or make adequate provision for his honest debts. This we think is not shown in this case, and therefore the conveyance must fall. Notwithstanding the testimony in the so-called bill of exceptions is not properly before us, we have read it carefully through, and the threats and statements of the grantor, as shown in it, only make clearer the intent on the part of Hunt by the conveyance to delay and defeat Spencer in the collection of his debt.

We see no error in the conclusion of the court, and the judgment will be affirmed.

All the Justices concurring: