## O. H. DRINKWATER *et al.* v. DAVID SAUBLE.

1. SUPREME COURT—*Harmonizing Findings and Verdict.* It is the duty of the supreme court, if it can, to give such a construction to the findings of the trial court and the jury, and to the general verdict of the jury, as will harmonize them and make them support the judgment.

2. MILL-DAM—*Action to Abate a Nuisance—Hearing.* An action to abate a mill-dam for the reason that it causes injury to the property of an upper proprietor is an action to abate a nuisance, and is an equitable remedy, and the trial may be before the court, or before a jury, or before a referee, or a part before one and a part before another, as the court in its discretion may determine.

3. JOINDER *of Causes of Action.* A plaintiff in an action upon a cause of action for damages arising from injuries to his land occasioned by the overflowing of the same with water, caused by the wrongful

construction and use of a mill-dam, may unite with such cause of action a cause of action to abate the mill-dam, or to perpetually enjoin its use, so far as its use is wrongful and a nuisance.

4. ———— *No Material Error.* The evidence, the findings of the court and jury, the general verdict of the jury, and the judgment of the court, considered, and *held*, that no material error as against the rights of the plaintiffs in error was committed.

### *Error from Chase District Court.*

THE material facts are stated in the opinion.  Judgment for plaintiff, *Sauble*, at the June term, 1888.  The defendants, *Drinkwater* and another, bring the case here.

*Sanders & Reese*, and *Rightmire & Radcliffe*, for plaintiffs in error.

*John Martin*, and *Madden Bros.*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action commenced in the district court of Chase county, on February 3, 1888, by David Sauble, against O. H. Drinkwater and P. P. Schriver, to recover damages for alleged injuries to the plaintiff's land, alleged to have been caused by the erection by the defendants, in October, 1886, of a mill-dam across the Cottonwood river, to the height of 10 feet, and causing the water therein to rise upon the plaintiff's land to the height of five feet above its ordinary and natural height, and thereby causing the alleged injuries; and the plaintiff also asked for the abatement of the dam to the extent of five feet from the top.  The defendants answered, alleging that the dam complained of was the mere replacement of a former dam which had been in existence and maintained by them for more than 15 years prior to the erection of the new dam, under a parol agreement between themselves and the plaintiff's grantors; and that the new dam was not higher than the old one, and did not cause the water to flow back farther or to rise higher on the plaintiff's land than the old one did.  The plaintiff replied by filing a general denial.  A trial was had before the court and a jury, and the

jury rendered the following verdict, and, in answer to inter-
rogatories, made the following special findings, to wit:

### "VERDICT.

"We, the jury impaneled and sworn in the above-entitled
case, do upon our oath find for plaintiff, and assess his damages
at $60."

### "SPECIAL FINDINGS.

"1. What was the height of the old dam when first con-
structed, and up to January, 1870?   Ans.   Eight feet.

"2. What was the height of the new dam when this suit
was brought?   A.   8 feet 8½ inches.

"3. Was not the new dam erected 68 feet lower down on
the ripple from where the old dam was located?   A.   Yes.

"4. What was the amount of fall between the old and the
new dam?   A.   Six inches.

"5. Did the water, while the old dam was in use for the
new mill, pass through the old flume of the old mill where the
wheel stood when in use for the old mill, and go directly into
the flume of the new mill?   A.   Yes.

"6. What is the difference in inches in the height of the
floor of the flume between where the wheel stood in the old
mill, and where it stands now?   A.   About six inches.

"7. What was the distance from or difference between the
head-water to tail-water on the old dam from 1868 to 1881,
at fall of dam?   A.   About eight inches.

"8. What is now the distance from or difference between
the head-water and tail-water at the new dam when at fall of
dam?   A.   7 feet 8½ inches, according to evidence.

"9. With an ordinary stage of water in the river, does the
new dam cause dead-water further up the river than the old
dam did when in good order?   If so, how much further up
the stream?   A.   Yes to first clause.   No definite testimony
to the last clause."

The court also made the following finding, to wit:

"It was further considered, ordered and adjudged by the
court, that said new mill-dam constructed by said defendants
was built in continuation of the old dam, and that the new
dam is and was eight inches higher than the old dam, and that
said new dam be taken down and abated by said defendants
to the height of eight inches from the top of said dam."

Upon this verdict and these findings the court below ren-

dered judgment in favor of the plaintiff and against the defendants for $60 damages, and for the abatement of the dam to the extent of eight inches from the top; and the defendants, as plaintiffs in error, bring the case to this court for review.

Two principal questions are involved in this case. First, did the defendants, by building and maintaining the old dam as they did, acquire a right to build and maintain a new dam of the same capacity as the old one, or, in other words, one that would back the water or cause it to rise upon the plaintiff's land as high as the old one did? Second, if the defendants did acquire any such right, then did they depart from the same by constructing the new dam in such a manner as to cause the water to flow back farther or to rise higher upon the plaintiff's land than was done by the old dam?

Without deciding the first question, we shall pass to the second one, to wit: If the defendants had a right to erect and maintain a new dam, did they construct the same in accordance with such right? No claim of error is made with regard to anything that occurred in the court below prior to the rendering of the verdict and the making of the special findings by the jury; and no objection was urged as against such verdict and findings at the time when the same were rendered and made, nor until a motion for a new trial was filed. The objections now urged against them are as follows: It is claimed that they are not supported by sufficient evidence; that the special findings are inconsistent with each other and inconsistent with the general verdict; that they do not mean what the court below and the jury evidently believed they meant, and that they are not sufficient to uphold the judgment actually rendered in the case. Objections are also urged against the finding made by the court itself. It is claimed that such finding is not supported by the evidence, and is contrary to law, and that the court had no power to make it. It is true the findings of the jury are not as intelligible as they might be, and as to the seventh there must be some mistake; but still, with regard to all the material findings made by the jury, we think they are capable of being harmonized with each other

and with the general verdict, and substantially with the finding made by the court itself; and taking all the findings and the general verdict together, we think they support the judgment. And it is our duty to give them such a construction, if we can, as will harmonize them and make them support the judgment. (*Bevens v. Smith*, 42 Kas. 250, 251, and cases there cited; *U. P. Rly. Co. v. Fray*, 43 id. 750, 759, and cases there cited; *Nichols v. Weaver*, 7 id. 373; *Simpson v. Greeley*, 8 id. 586; *St. L. & S. F. Rly. Co. v. Ritz*, 33 id. 404.) The general verdict is a finding in favor of the plaintiff and against the defendants upon all the issues in the case. It is therefore virtually a finding that the new dam is higher than the old one was; that it causes the water to flow back farther and to rise higher upon the plaintiff's land than the old one did, and that the plaintiff was injured and damaged by reason thereof and by the wrongs of the defendants. It was also found specially by the jury that the new dam is 8 feet 8½ inches high, and that the old dam was only eight feet high; that the new dam causes the water to flow back farther up the river than the old dam did; and that the plaintiff was thereby damaged to the amount of $60. Evidently the jury intended to find that the new dam, in altitude, measuring from the same level, was 8½ inches higher than the old dam was. And the court itself found that the new dam was eight inches higher than the old dam was, and ordered that the new dam should be abated to that extent. An action to abate a mill-dam for the reason that it causes injury to the property of an upper proprietor is an action to abate a nuisance, and an action to abate a nuisance, as well as an action to enjoin a nuisance, is an equitable remedy. (Gould, Waters, § 555; 3 Pom., Eq. Jur., § 1359.) And in all actions of an equitable character the trial may be before the court, or before a jury, or before a referee, or a part before one, and a part before another, as the court in its discretion shall determine. (Civil Code, §§ 266, 267; *Hunt v. Spencer*, 20 Kas. 126; *Hixon v. George*, 18 id. 253, 256, 257; *Carlin v. Donegan*, 15 id. 495;

*1. Supreme court —harmonizing findings and verdict.*

*2. Mill-dam— action to abate a nuisance— hearing.*

*Woodman v. Davis*, 32 id. 344, 346, 347, and cases there cited.)
The court below undoubtedly had the right to make the find-
ing which it did; and upon all the findings as
made by the court and jury, we cannot say that
the judgment rendered by the court is erroneous; nor can we
say that such findings are not supported by sufficient evidence.

<span style="float:left">4. No material error.</span>

There seems also to be a claim that there is a misjoinder of
causes of action, but evidently there is not.   A plaintiff, in an
action upon a cause of action for damages arising from injuries
to his land occasioned by the overflowing of the
same with water caused by the wrongful construc-
tion and use of a mill-dam, may unite with such
cause of action, a cause of action to abate the mill-dam, or to
perpetually enjoin its use, so far as its use is wrongful and a
nuisance. (*Akin v. Davis*, 11 Kas. 580.)

<span style="float:left">3. Joinder of causes of action.</span>

Some slight errors have intervened in this case, as before in-
timated, but no substantial error has been committed as against
the rights of the plaintiffs in error.   There was evidence in-
troduced that tended to show that the new dam causes the
water to rise upon the plaintiff's land much more than eight
inches higher than the old dam caused it to rise.

The judgment of the court below will be affirmed.

All the Justices concurring.