No. 22,238.

THE LOWELL-WOODWARD HARDWARE COMPANY, *Appellee*, v. F. W. DAVIS et al. (ED SEMKE and CLARA F. SEMKE, *Appellants*).

#### SYLLABUS BY THE COURT.

1. FRAUDULENT CONVEYANCE—*No Consideration—Bad Faith of Grantor —Intent of Grantee Immaterial.* The transfer of property by a debtor to his wife without consideration, thereby placing all of his property subject to be taken by creditors beyond the reach of his creditors, amounted to a fraud in law, and the intent of the wife in accepting the transfer is immaterial.

2. SAME—*Statute of Limitations.* The statute of limitations did not run against the action to set aside the fraudulent transfer until two years after the creditors' claim was reduced to judgment, it having been prosecuted with reasonable diligence.

Appeal from Jewell district court; RICHARD M. PICKLER, judge. Opinion filed December 6, 1919. Affirmed.

*W. R. Mitchell,* of Mankato, and *F. H. Stubbs,* of Superior, Neb., for the appellants.

*R. W. Turner,* and *Donald F. Stanley,* both of Mankato, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The Lowell-Woodward Hardware Company obtained a judgment against the defendants, Ed Semke and others, on January 8, 1918, and shortly afterwards brought this action against Semke and his wife to subject to the payment of the judgment certain lands and other property which it was alleged Semke had transferred to his wife for the purpose of hindering, delaying and defrauding his creditors. The trial resulted in a finding that the transfer of a tract of 140 acres of land by Semke to his wife had the effect of hindering and delaying his creditors, and a judgment that it be set aside and subjected to the payment of plaintiff's judgment. Defendants appeal.

The evidence tends to show that in 1911 Semke and five others engaged in a mining venture as partners, and became indebted to the plaintiff and others, to the extent of $24,000.

Plaintiff had furnished supplies for the partnership during the year 1911 and a part of 1912, and some payments were made upon account. Later the balance was included in a note which was several times renewed and afterwards placed in judgment. It appears that the mining business was a losing venture, and the firm suspended operations in 1912, with a large indebtedness and no assets. Several meetings were held by the partners in 1912, at which the indebtedness of the firm was discussed, one of which was attended by Mrs. Semke. She objected to the execution of a note which was presented to her husband for signature, and she snatched and crumpled it in her hand, but it was afterwards signed by her husband. On March 13, 1913, Semke executed a conveyance of the tract mentioned to one White, but no consideration passed in the transfer, and two days later White conveyed the land to Mrs. Semke without the payment of any consideration. A few days before this transfer Semke executed to his wife a promissory note due two years after date for $4,000, and gave as security a chattel mortgage on practically all of his personal property. This property remained on the farm as before, but the business was thereafter done in his wife's name. On February 28, 1914, he executed a bill of sale for the personal property, covering that which was included in the chattel mortgage, and the consideration named was $4,000. Although given for the debt mentioned in the chattel mortgage, the bill of sale recites that the transfer is made subject to that mortgage, giving the transaction the appearance of an attempt by both parties to complicate and cover up. On September 2, 1913, he executed a deed to another tract of land to his wife for a named consideration of $9,650, but no money was paid by her for the land. This tract was occupied by him and his wife as their homestead and was therefore not subject to sale for his indebtedness. Later and on August 9, 1916, Semke and his wife executed a mortgage on their lands containing altogether 460 acres, for the sum of $10,300. On August 12, 1916, Mrs. Semke purchased an additional quarter section of land for $8,000. It further appears that in 1913 no property was assessed to Mrs. Semke, but the following year there was assessed to her, personal property in the amount of $10,660, and real estate of the value of $13,640.

In 1918, when Semke was urged to pay his indebtedness to plaintiff, he stated, in substance, that he had no property in his name, that he had put it all in his wife's name, and that if plaintiffs thought they could get anything to "hop to it." So far as Ed Semke is concerned, the facts show a studied attempt to strip himself of all his property, and to delay and defeat his creditors. Within a few months he transferred all property subject to execution, and with the evident purpose of placing it beyond the reach of creditors. So far as Mrs. Semke is concerned, she has little reason to complain of the judgment. She showed that in 1912 her husband borrowed $1,000 from her that she had obtained from her father, and further, that he owed her an indebtedness of an additional sum of $153.83. These debts furnished some consideration for the $4,000 note and the mortgage which Semke gave his wife, and, although subject to serious challenge, the holding of the trial court was that the transfer of the personal property was valid. The value of that property greatly exceeded the indebtedness of Semke to his wife, and there was no consideration whatever for the real estate that was transferred to her. Under the testimony and findings, the conveyance was purely voluntary. The only consideration was the promise which he made to her when he borrowed from her the $1,000, that he would give her two dollars for every dollar he lost in the mining venture.

Some reliance is placed upon the finding of the court that she had no actual intent to hinder, delay or defraud creditors when she accepted the conveyance. She knew her husband had been in several losing ventures, and knew that there were unpaid debts. She says that she secured the transfer of the property to her because of the poor financing of her husband; and fearing that all the property would be lost, they together concluded to put it beyond his control. This was the wife's acknowledged purpose. But, granting that there was no actual intent on her part to defraud his creditors, the placing of it beyond his control by a transfer which was without consideration, when there were creditors, amounted to a fraud in law.

In *Farlin v. Sook*, 30 Kan. 401, 1 Pac. 123, it is said:

"It is doubtless true that when the conveyance is entirely without consideration, or when such consideration is entirely some reservation

or benefit to the grantor, or when the conveyance is upon some secret trust for the benefit of the grantor, or to one having no personal interest in the conveyance, such as a mere assignee, the knowledge and intent of the grantee are immaterial, and the conveyance may be set aside at the instance of creditors." (p. 404.)

It has been further said:

"The rights of a vendee, innocent of the fraudulent intent of the vendor, are only protected where such vendee gives a valuable consideration. If there be no valuable consideration, the mere acceptance of the transfer by the vendee does not make the transaction a *bona fide* one." (*Bush, Sheriff, v Collins*, 35 Kan. 535, 541, 11 Pac. 425.)

(See, also, *Gollober v. Martin, Sheriff*, 33 Kan. 252, 6 Pac. 267; *Lawson et al. v. Funk*, 108 Ill. 502; *Davidson v. Burke*, 143 Ill. 139; 20 Cyc. 463-469; 12 R. C. L. 539; *Ludlow Savings Bank & T. Co. v. Knight*, [Vt.] 102 Atl. 51.)

Even where a consideration is paid for a transfer from a fraudulent grantor, the grantee cannot shut his eyes and hide behind the screen of an absence of actual knowledge of the fraud of the grantor.

"A knowledge of facts sufficient to put one upon inquiry, which, if duly prosecuted, would have disclosed such fraudulent intent, is equivalent to actual knowledge of the same." (*Richolson v. Freeman*, 56 Kan. 463, 467, 43 Pac. 772.)

The promise of Semke that he would give his wife two dollars for every dollar he might lose in his mining project did not constitute a consideration for the conveyance, and the finding is that she did not seriously rely on that promise. The decision of the court that the tract of land conveyed to her should be set aside and subjected to the payment of plaintiff's debt is well sustained by the testimony.

The contention that the action was barred by the statute of limitations cannot be upheld. The ground advanced is that the conveyance was executed and recorded more than the statutory period of two years before the action on Semke's note was begun. This action to set aside the conveyance did not accrue until that note was reduced to judgment. There was no unreasonable delay in suing on the note, nor in bringing this action after judgment was obtained. The note did not mature until March 14, 1917, and the action thereon was brought on March 17, 1917, and judgment was recovered on January 8, 1918. This proceeding was brought on April 8,

1918, and as the cause of action pleaded did not accrue until the judgment on the note was rendered, it was well within the statutory period of limitation. (*Young v. Buck,* 97 Kan. 195, 154 Pac. 1010.)

The judgment is affirmed.