No. 32,002

THE SECURITY BENEFIT ASSOCIATION, *Appellant*, v. E. W. SWARTZ, MAYME ANNE SWARTZ, CLORIS M. JOHNSON, J. E. LAWSON and JESSIE LAWSON, *Appellees.*

(40 P. 2d 433)

Opinion filed January 26, 1935.

*J. W. Breyfogle, Jr.,* and *S. T. Seaton,* both of Olathe, for the appellant.
*Frank D. Hedrick,* of Olathe, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action in the nature of a creditor's bill brought by the mortgagee against the mortgagor, his wife and daughter to set aside a deed to certain real property other than that which had been mortgaged which was conveyed by the mortgagor and his wife to their daughter for one dollar, love and affection. This action was commenced after personal judgment had been procured in a foreclosure action, the property sold at sheriff's sale, the sale confirmed and an execution on the deficiency judgment had been returned unsatisfied.

The plaintiff, after setting out in full in its petition the various steps taken in the matter from the beginning, alleged that the conveyance to the daughter was voluntary and without a valuable consideration and with the intent to hinder and delay the plaintiff in the collection of the obligation due it from the mortgagors, and was actually, and as a matter of law, fraudulent as against the plaintiff. The answer was a general denial, with a counter allegation of fraud, which is not involved in this review. After the introduction of some evidence the trial court limited the issues to whether or not the actual market value of the mortgaged property was ample to cover the debt held by the plaintiff, and at the close of the evidence made one finding of fact, which is as follows:

"The court finds from the evidence in this case that the actual market value of the property on which the plaintiff held its mortgage which had been executed by the defendants, E. W. Swartz and wife, to the plaintiff for the face amount of $6,000 was, on the 10th day of August, 1931, in excess of the total amount of the principal and interest then due thereon."

The one conclusion of law was that "defendants are entitled to judgment for their costs."

After the overruling of the motion for a new trial the plaintiff appealed, assigning many errors, among which were the failure of the trial court to make more definite and certain the one finding it did make, and its failure to make findings as to the other issues raised by the pleadings, particularly with respect to the issue of the intent of defendants to hinder and delay the plaintiff in the collection of the obligation due plaintiff from the defendant mortgagors.

Appellees cite *Moorhead v. Edmonds*, 99 Kan. 343, 161 Pac. 610, and other Kansas decisions to the effect that if no request is made in the trial court by the party desiring the findings to be made more complete or clear, such a complaint will not be considered on appeal.

The abstract shows such a request in the motion for a new trial filed two days after the finding was filed by the court. The fourth ground of the motion for a new trial is as follows:

"4. That the finding as to the value of the property in controversy deeded by E. W. Swartz and Mayme Anne Swartz to Cloris M. Johnson is too vague and indefinite and the court erred in not making a definite finding as to the value of the property so conveyed on the 10th day of August, 1931."

The journal entry shows this motion was argued orally in court two days after the finding was filed.

Other grounds of the motion urged as an error the failure to make any findings on the other issues under the pleadings, setting them out separately in the motion for new trial. In this same connection it must be remembered that the plaintiff requested the trial court to make findings upon a number of points raised as issues by the pleadings. In *Briggs v. Eggan*, 17 Kan. 589, it was held:

"Where an action is tried by the court without a jury, and one of the parties requests the court, in accordance with section 290 of the civil code, to state in writing its conclusions of fact found, separately from its conclusions of law, and the court refuses so to do, and makes only one general finding of fact and of law, which finding is against the party making such request, and in favor of the other party, and judgment is rendered according to such finding, the court commits substantial error." (Syl.)

In *Vickers v. Buck*, 70 Kan. 584, 79 Pac. 160, it was held:

"Where a case is tried to a court without a jury and one of the parties requests the court to state its findings of fact separately from its conclusions of law, it is error for the court to refuse the request, or to refuse to make such separate findings so definite that the party may have a fair opportunity to except to the decision of the court upon the conclusions of law involved in the trial." (Syl. ¶ 2.)

In *Fuller v. Williams*, 125 Kan. 154, 264 Pac. 77, it was held:

"When an action is tried to the court, and the court is requested to make findings of fact as provided by R. S. 60-2921, and undertakes to find evidentiary facts, it is error for the court to refuse, on timely request, to make findings of fact on material matters put in issue by the pleadings and on which evidence was introduced." (Syl. ¶ 1.)

The plaintiff did all it reasonably could do to have the court make findings of fact on all the issues raised by the pleadings and to call its attention to the indefinite and incomplete finding that was made, and under the authorities above cited the findings should have been made on all the issues raised in the pleadings, and the finding that was made should have been made more definite.

The theory of the appellees, adopted and followed by the trial

court, was to the effect that if the market value of the property mortgaged was equal to or exceeded the amount of the mortgage indebtedness on the day the mortgagors conveyed away their other property, the matter of intention to hinder, delay or defraud the plaintiff was of no consequence in the action.

Before the court limited the issues to the market value of the mortgaged property on the day the deed to the daughter was made to the other property owned by the mortgagors in the same county, the evidence already introduced showed that the original mortgage had been made to the plaintiff by a man named Bailey, who sold or traded this property to defendant, and when the mortgage became due on June 1, 1930, the defendant mortgagor wrote the plaintiff company requesting that it be extended for three years, and added this sentence: "As soon as I can sell other properties I now hold, I intend to pay this loan." The company renewed the loan of $6,000 with entirely new papers and required that the principal be reduced on June 1, 1931, by the payment of $500, and by a similar payment a year later. No part of the loan nor interest thereon was paid on June 1, 1931.

On July 31, 1931, defendant mortgagor personally called on the officers of the plaintiff company in Topeka and tendered a deed to the property mortgaged for the surrender and cancellation of the note and mortgage. The plaintiff company declined to accept a deed, because the property was not worth the amount of the note and mortgage, and further because he had advised the company when the loan was renewed that he had other property and knew that the company would expect payment in full of the amount due. The testimony of the defendant mortgagor is that he said he was not able to make the payments, that he would hold the property the full eighteen months unless the company accepted his proposition and that a deficiency judgment would be worthless in his case. Ten days after this conversation, viz., on August 10, 1931, the mortgagor and wife executed this deed to another property in the same town to their daughter for one dollar, love and affection, and the mortgagor testified it was an outright gift. His testimony further shows that he and wife, on the same day they executed the deed to the daughter for the property in town, executed a deed to their son for 160 acres in another county, which was all the property he had except that mortgaged to the plaintiff.

The plaintiff company immediately commenced foreclosure proceedings and obtained a personal judgment against the mortgagor for $6,642.72, and on March 14, 1932, purchased the property at sheriff's sale for $4,000, which sale was confirmed, leaving a deficiency judgment against defendant mortgagors of $3,055.01. During the same month an execution on the deficiency judgment was returned unsatisfied and then this action in the nature of a creditor's bill was commenced.

We are confronted with a new theory to the effect that a mortgagor has a legal right to completely settle a mortgage obligation by tendering to the mortgagee a deed to the property mortgaged. Because this is often done by way of compromise is no ground for it as a legal right of the mortgagor.

Appellees cite R. S. 60-3463 and chapter 218 of the Laws of 1933 as practically forbidding the practice of taking deficiency judgments in foreclosure actions. We do not so understand these acts. If so, there would be no need whatever for the court fixing a minimum or upset price in such cases as is authorized in the latter act cited. The trial court evidently, after having confirmed the sheriff's sale in the foreclosure action at a price which left a deficiency judgment, is attempting, in this different action, to consider the matter wholly as if it were in effect acting upon the sufficiency of the bid at the sheriff's sale, eliminating the main features of this action based almost entirely upon the issue of intent to hinder, delay and defraud the plaintiff by conveying to a daughter as an outright gift a part of the other property he told the mortgage company he owned and on the strength of which he procured a renewal of the loan. Of course, the value of the security is a part of the issues here involved, but it is not the sole issue, and findings should have been made on all the issues raised by the pleadings on which evidence was introduced. This action properly falls under R. S. 33-102, commonly called the statute of frauds.

The case of *Hunt v. Spencer*, 20 Kan. 126, was where the father conveyed to his daughter nearly all his property three days before an action was commenced against him on a preëxisting debt, and in the opinion, written by Judge Brewer, it was held:

"A voluntary conveyance can be sustained as against existing creditors, only when under all the circumstances of the case the property retained by the grantor furnishes reasonable and adequate provision for the discharge of his debts." (Syl. ¶ 3.)

The case of *Buck v. Vickers*, 93 Kan. 766, 145 Pac. 904, was where a debtor, being pressed by numerous creditors, conveyed all of his property to a member of his family for a consideration considerably less than its value, which he used in part toward the payment·of some of his debts, and it was there held that—

". . . the transaction disclosed an intent to hinder and delay creditors and had that effect within the purview of the statute of frauds and perjuries." (Syl.)

In the case of *Hardware Co. v. Semke*, 105 Kan. 628, 185 Pac. 732, it was held:

"The transfer of property by a debtor to his wife without consideration, thereby placing all of his property subject to be taken by creditors beyond the reach of his creditors, amounted to a fraud in law, and the intent of the wife in accepting the transfer is immaterial." (Syl. ¶ 1.)

In Bump on Fraudulent Conveyances, 4th ed., p. 18, it is stated:

"The time for the performance of a contract is both in morals and in law an essential part of the contract itself, and a debtor who attempts to postpone the time of payment, endeavors to deprive his creditors of a valuable right, and thus it may justly be said that a positive intent to defraud always exists where the inducement to a conveyance is to hinder and delay creditors, since the right of creditors to receive their demands when due is as absolute as their right to receive them at all."

In The Law of Fraudulent Conveyances, by Glenn, on pages 365 and 366, it is said with reference to the value of property left:

"Market values constitute the primary basis; it is only if there was no ready market at the time that secondary methods are to be employed, such as book values, expert opinion and the like. . . . . a person, although he is indebted at the time, may give away a part of his property, if in so doing he has no· actual intent to defraud present . . . creditors . . . , provided he has sufficient property left to pay his creditors."

In 27 C. J. 501 it is said:

"With respect to the financial condition of the grantor, within the rule governing fraudulent conveyances, he will be considered insolvent when his property, subject to the payment of his debts, is not sufficient to pay all his debts. Insolvency has also been defined as the inability to pay debts when they become due in the ordinary course of business, or where the value of his remaining property is so near the amount of his debts that the conveyance tends directly to impair the creditors' power to force collection by judicial process." (See, also, *Glenn v. Callahan*, 125 Kan. 44, 262 Pac. 583; *Jennings & Sons Tire and Accessory Co. v. Farmer*, 127 Kan. 164, 272 Pac. 167; and *Kinsley Bank v. Aderhold*, 130 Kan. 126, 285 Pac. 597.)

Market value is the usual and general basis and test as to value, but sometimes there is no market for certain kinds of property, as some of the witnesses in this case testified. We cannot measure securities and their adequacy to pay debts by original or replacement costs, but by such values as can be realized therefrom at the time in question for the purpose of applying the same toward the payment of the debt.

For the reason that there were no findings of fact on some of the important issues raised by the pleadings, and because the one finding made was indefinite and not modified when requested, the judgment must be reversed and a new trial granted.

The appellant urges that since much of the testimony in this case was given by deposition, this court can give it independent consideration and make findings on the issues concerning intent of defendants to hinder, delay or defraud the plaintiff, citing *Linn v. Blanton,* 111 Kan. 743, 749, 208 Pac. 616, and *Corson v. Oakley,* 138 Kan. 520, 529, 27 P. 2d 229, in support and approval of so doing, but such would not be proper in this case because of the fact that the court in the midst of the taking of testimony declined to hear any further testimony on any issue except that of the market value of the encumbered property, and it might be that the parties, and particularly the defendants, had further testimony on these other issues which they intended and were prepared to offer, and the matter should not be decided without an opportunity being given to offer the same.

The judgment is reversed and the cause is remanded with directions to grant a new trial.