No. 32,240

THE FARMERS STATE BANK OF POTTER, by CHARLES W. JOHNSON, as Receiver, etc., *Appellee,* v. SARAH F. MITCHELL, as an Individual and as Executrix of the Estate of R. F. Mitchell, Deceased, JESSIE A. DILL, CARRIE M. HALL, FRANCES L. PARKER, SUE A. BLODGETT and HELEN E. HISER, *Appellants.*

(55 P. 2d 423)

Opinion filed March 7, 1936.

*B. J. Lempenau,* of Topeka, *James B. Kelsey* and *Homer Davis,* both of Leavenworth, for the appellants.

*Gerald W. Foley,* of Atchison, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action in the nature of a creditor's bill to set aside certain alleged fraudulent conveyances and to subject the property to the satisfaction of plaintiff's claims allowed in the probate court.

The trial court set aside the conveyances and directed the real estate be subjected to the payment of claims of creditors against the estate. From that judgment defendants appeal. The parties made defendant were: Sarah F. Mitchell, an individual (widow of deceased); Sarah F. Mitchell, executrix of the estate of R. F. Mitchell, deceased; and the five Mitchell children, all of whom were adults.

The trial court made findings of fact as follows:

1. "That on December 11, 1931, R. F. Mitchell and Sarah Mitchell, his wife, made, executed and delivered their certain warranty deed to Sarah Mitchell, the wife, one of the defendants herein, to the real estate involved herein and set out in plaintiff's petition, situated in Jefferson county, Kansas, which deed was recorded in the office of the register of deeds of Jefferson county, Kansas, on December 12, 1931.

2. "That R. F. Mitchell died about three weeks after the execution and delivery of said deed.

3. "That at the time of the execution of said deeds to Sarah Mitchell, the said R. F. Mitchell owed the Potter State Bank, the plaintiff herein, the sum of $2,900 and interest on a promissory note which was not due at that time. The evidence fails to disclose the date of maturity of said note.

4. "That said sum of $2,900 was all that the said R. F. Mitchell owed said bank at the time of the transfer of title to said real estate.

5. "That on the 1st day of July, 1930, R. F. Mitchell signed a financial statement for the Farmers State Bank in which he listed his assets as follows:

Personal property:
| | |
|---|---:|
| Cash on hand in bank.: | $400.00 |
| Bills receivable | 3,500.00 |
| Bank Stock and Bldg. and Loan | 3,000.00 |

Real estate:
| | |
|---|---:|
| 393 a. in Jeff. and Leaven. Co | 39,300.00 |
| House in Potter | 3,000.00 |
| Equity in 361 a. | 5,000.00 |
| | $54,200.00 |

Liabilities:
| | |
|---|---:|
| Farmers State Bank | $3,000.00 |
| Notes payable (unsecured) | 2,000.00 |
| | $5,000.00 |
| Net worth | $49,200.00 |

6. "After the death of the said R. F. Mitchell, administration was taken out of his estate in Atchison county, Kansas, and. the following assets listed:

| | |
|---|---|
| Personal property consisting of corn, wheat, oats, hay, wood, Ford car and desk | $624.25 |
| Other property consisting of 20 shares of bank stock, estimated value | 2,000.00 |
| Amount due the estate, notes and open accounts | 602.50 |
| Cash, Farmers State Bank | 142.00 |

7. "That on the 6th day of February, 1933, Sarah Mitchell filed her final account as executrix of the estate of Robert F. Mitchell, deceased, showing payment of preferred claims in the sum of $997 and claiming due her as executrix, a balance of $170 advanced by her to pay said preferred claims.

8. "The evidence fails to disclose whether or not any consideration was paid by the said Sarah F. Mitchell to R. F. Mitchell for the land in controversy, other than the fact that the deed states as a consideration, love and affection.

9. "That on the 25th day of August, 1932, the said Sarah F. Mitchell conveyed to the other defendants herein the above-described real property for the consideration of $1 and other valuable consideration, the grantees in said deed being the children of Sarah F. and R. F. Mitchell, and being devisees and legatees under the last will and testament of the said R. F. Mitchell.

10. "That the Farmers State Bank, plaintiff herein, failed January 18, 1933, more than twelve months after the death of R. F. Mitchell.

11. "That so far as the evidence discloses there is no property, either real or personal, belonging to the estate of R. F. Mitchell out of which the claims of plaintiff could be paid, except the homestead occupied by the widow and some equities of very doubtful value.

12. "That on the 19th day of November, 1932, the Farmers State Bank of Potter had its claim allowed on the note mentioned heretofore in the sum of $3,306.82, with interest at ten percent from that date, which claim has never been paid.

13. "That on the 25th day of March, 1933, the plaintiff has its claim for double liability on its twenty shares of bank stock allowed in the probate court in the sum of $2,000, which claim has never been paid."

The trial court made one conclusion of law, which was—

"That the demurrer of the defendants to the plaintiff's evidence should be and the same is hereby overruled."

Appellants' first complaint is the trial court erred in overruling their objection to the introduction of evidence. The basis of this contention is the petition did not allege sufficient facts to entitle plaintiff to a judgment for stockholder's double liability. This was not an action to establish a claim for double liability. The petition alleged in substance, that at the death of R. F. Mitchell, he was the owner of twenty shares of capital stock in plaintiff bank; that thereafter the bank became insolvent, and Mitchell's estate became liable

for the double assessment in the sum of $2,000; the bank duly and regularly recovered a judgment thereon in the probate court against the estate of R. F. Mitchell, deceased, in the sum of $2,000, and that no appeal has been taken from the order and judgment of the probate court.

No appeal was taken from that order and, of course, it became final. It was not subject to direct or collateral attack. In *Bowlus, Executor, v. Winters,* 117 Kan. 726, 233 Pac. 111, it was said:

"It is settled law that within its jurisdiction a judgment of a probate court unappealed from is as binding as that of a court of general jurisdiction. (*Lake v. Hathaway,* 75 Kan. 391, 89 Pac. 666.)" (p. 729.)

In the course of the same opinion it was further said:

"It follows that the probate court had jurisdiction to authorize the sale of the property; the proceedings under which the property was sold contained no irregularity, and being unappealed from were binding and valid against either direct or collateral attack." (p. 732.)

See, also, *Parsons v. McCabe,* 127 Kan. 847, 275 Pac. 173; *Uhl v. Groner,* 140 Kan. 653, 28 P. 2d 130.

It is next contended the probate court had no jurisdiction to allow the stockholder's double-liability claim in that it was not filed in time. The contention is not sound. Statutes of nonclaim or limitation are available as a defense, but they do not rob the court of jurisdiction.

It is next urged that when the bank closed Mitchell was dead, and hence did not have title to the stock, that title having passed to the executrix. True, the stock being personalty, title passed to the personal representative. The executrix became *ad interim* the title holder of the stock which had belonged to the deceased and which remained in his name in the stock register of the bank and in the records of the bank commissioner at the time of his death. Title had never been changed in the bank register or in the records of the bank commissioner. This stock was listed in the inventory as assets of decedent's estate. The stock liability was a proper claim against the estate. (*Farmers State Bank v. Callahan,* 123 Kan. 638, 256 Pac. 961; *Midwest State Bank v. Sandidge,* 131 Kan. 339, 291 Pac. 766.)

Furthermore, appellants are in no position to complain. Judgment for double liability was rendered against the estate in the probate court. No appeal was taken from that judgment, and it is final.

Appellants also contend any claim appellee had against the estate can only be paid out of property in the hands of the executrix. Were such a theory tenable, it would indeed be an easy way to defraud creditors. Fortunately our laws provide otherwise. R. S. 22-1301 provides for citation and examination on oath or affirmation of persons suspected of concealing, embezzling or conveying personalty which belonged to deceased. With reference to real estate subject to sale for decedent's debts, R. S. 22-803 provides:

"The real estate liable to be sold as aforesaid shall include all that the deceased may have conveyed with intent to defraud his creditors, and all other rights and interests in lands and tenements not exempt by law: *Provided,* That lands so fraudulently conveyed shall not be taken from any one who purchased them for a valuable consideration, in good faith, and without knowledge of the fraud; and no claim to the lands so fraudulently conveyed shall be made, unless within three years next after the decease of the grantor."

The statute does not expressly provide who may institute proceedings to set aside fraudulent conveyances. It has been specifically held the administrator is a proper party to bring the action. (*Horton v. Jones,* 110 Kan. 540, 204 Pac. 1001.) In the early case of *Barker v. Battey,* 62 Kan. 584, 64 Pac. 75, it was held:

"Where the estate of a decedent is insufficient for the payment of his debts, and it appears that before his death he conveyed real estate with intent to defraud his creditors, and that the administrator occupies a position antagonistic to the interests of creditors, and refuses, upon their requests, to institute a proceeding to reach the property fraudulently transferred, a creditor beneficially interested may bring an action to set aside the fraudulent conveyance, making the administrator and others interested defendants." (Syl. ¶ 1.)

In the instant case the executrix was alleged to be both the fraudulent grantee in the deed from her husband and also the fraudulent grantor in the deed conveying the same property to the defendant daughters. In this action she was contesting both in her individual capacity, and as executrix, an effort to set aside the conveyances. A mere statement of the facts discloses the futility of a request that she prosecute the action to set aside the deeds. Furthermore, as executrix, she would have been obliged to sue herself as an individual and her daughters as grantees of her own alleged fraudulent conveyance. The creditor, under these circumstances, was justified in bringing an action to set aside the conveyances for the purpose of removing the cloud from the title. That having been done, the real estate was then subject to sale by the probate court for the payment of debts in accordance with provisions of law for administration of decedents' estates.

Appellant insists appellee's cause of action was not .mature, in that an execution had not been returned unsatisfied. True, it has been held this is *ordinarily* a prerequisite to an action in the nature of a creditor's bill. (*Donaldson v. Jacobitz,* 67 Kan. 244, 72 Pac. 846; *Bank v. Ternes,* 110 Kan. 475, 204 Pac. 699; *National Bank v. Walters,* 129 Kan. 49, 281 Pac. 868; *First National Bank v. Smith,* post, p. 369, 55 P. 2d 420, decided this day.) In the Ternes case it was held:

". . . and it is *ordinarily* necessary for him to show that execution has been returned unsatisfied *or that the remedies afforded by law have been exhausted."* (Syl. ¶ 1.) (Italics inserted.)

In the instant case appellee's remedies afforded by law had been exhausted. Prior to final order of distribution an unsecured creditor could not reach property of decedent's estate by attachment or execution (*O'Loughlin v. Overton,* 68 Kan. 92, 74 Pac. 604; *Uhl v. Groner,* 140 Kan. 653, 38 P. 2d 130), nor by garnishment (*McCarthy Hardware Co. v. Foust,* 118 Kan. 431, 235 Pac. 867; *Citizens State Bank v. Moore,* 121 Kan. 628, 249 Pac. 587).

Appellants finally contend insolvency of decedent and fraudulent intent were not established. Analysis of findings of fact 5, 6 and 7 is indeed interesting. The evidence concerning items contained in findings 5 and 6 is illuminating. The twenty shares of stock listed in finding 6 as an asset became a $2,000 liability. The final account of the executrix disclosed insufficient funds by $170 to pay preferred claims alone. About three weeks prior to decedent's death, and on the same day, he conveyed by separate deeds to his wife in consideration of one dollar, love and affection, 183.31 acres of land in Jefferson county, and 210 acres in Leavenworth county. This property. had been previously devised to his wife with remainder to the children. No building and loan stock appearing in finding 5 is listed in finding 6. If it ever existed it, too, had disappeared. The house in Potter was the homestead and, of course, exempt. The so-called equity in 361 acres of land in Atchison county, listed at $5,000 in finding 5, had vanished. That land carried a $12,000 mortgage. It sold for $8,500 on foreclosure, leaving a deficiency judgment of about $5,700. Decedent held a one-third interest in the Squire farm. That farm carried a $3,000 mortgage. There was no equity in it, and the prospects were it might terminate in a liability. The bills receivable items, listed at $3,500, represented

charged-off assets of the old Potter bank. They were charged off in a bank merger over five years ago and the amount collected on them was negligible. There is abundant competent evidence to support finding number 11.

None of the defendants took the witness stand. That is not surprising. The daughters learned of decedent's note indebtedness to the bank in the sum of $2,900 following his death. A bank employee testified, "The daughters assured the bank it would be taken care of." The deed to them from the mother was made about ten months after the father's death and in it the mother reserved a life estate. It will be readily observed that practically all property not exempt was disposed of and that in the property retained no equity remained. The conveyances were to members of the family. There was ample evidence the conveyances were not in good faith, and that none of the grantees were bona fide purchasers. (*Hunt v. Spencer*, 20 Kan. 126; *Hardware Co. v. Semke*, 105 Kan. 628, 185 Pac. 732; *Hardcastle v. Hardcastle*, 131 Kan. 319, 291 Pac. 757; *Security Benefit Ass'n v. Swartz*, 141 Kan. 227, 40 P. 2d 433, and authorities therein cited.) See, also, 27 C. J. 501, 526, 803.

With the removal of the cloud from the title of decedent's real estate, jurisdiction of the district court ended, under the issues joined in this action. The property is now subject to sale and administration by the probate court in accordance with provisions of law for administration of decedents' estates. If, in the sound judgment of the probate court, a personal representative by reason of personal interest is antagonistic to the interests of creditors, the probate court should appoint a successor who will discharge the duties of the office with promptness and dispatch.

The judgment is affirmed with directions for further proceedings as indicated.