No. 33,366

The Security Benefit Association, *Appellant,* v. E. W. Swartz, Mayme Anne Swartz, Cloris M. Johnson, J. E. Lawson and Jessie Lawson, *Appellees.*

(70 P. 2d 16)

Opinion filed July 10, 1937.

*R. W. Coleman* and *John W. Breyfogle, Jr.,* both of Olathe, for the appellant.

*Frank D. Hedrick* and *Howard E. Payne,* both of Olathe, for the appellees.

The opinion of the court was delivered by

Wedell, J.: This was an action in the nature of a creditor's bill. Defendants prevailed, and plaintiff appeals.

Plaintiff, in a mortgage-foreclosure action against the defendants, E. W. Swartz and Mayme Anne Swartz, his wife, had obtained a deficiency judgment against the defendant mortgagors, and this action was an attempt to satisfy that deficiency judgment out of other property alleged to have been fraudulently conveyed to their daugh-

ter, Cloris M. Johnson. J. E. Lawson and Jessie Lawson were tenants of the property conveyed to the daughter and hence were made parties defendant. The action was tried to the court.

Plaintiff earnestly contends the undisputed evidence clearly discloses the conveyance was fraudulent in fact, but in any event constituted constructive fraud. The contention requires a review of the record.

Defendants Swartz and his wife had been indebted to plaintiff under certain mortgage notes aggregating $6,000. The mortgage was on residence property located in the city of Olathe. The controversy turns on the market value of the mortgaged property and the question of fraud in the conveyance of all other property owned by defendant mortgagors at a time when they were in default on the mortgage debt. The conveyances left nothing out of which a deficiency judgment could be satisfied. The mortgagors were in default on June 1, 1930. Swartz was informed the loan must be paid or satisfactory arrangements made for a renewal. On July 14, 1930, Swartz wrote to plaintiff. The pertinent portion of the letter reads:

"It will be necessary for you to renew the loan No. 1693 for a period of three years, with the privilege of paying any part or all of it at any interest-paying date during that period.

"*As soon as I can sell other properties, I now hold, I intend to pay this loan.*" (Italics inserted.)

The pertinent portion of plaintiff's letter of July 15, 1930, in answer to defendant Swartz, reads:

"We are willing to renew this loan but will require new papers to be signed for the same and the abstract brought down to date showing everything to be in satisfactory condition. The rate will be the same, to wit: 6% payable semiannually, but all expenses in connection with the renewal will have to be paid by you.

"*In addition to this, we will want at least $500 paid on this loan June 1, 1931, and $500* paid on June 1, 1932." (Italics inserted.)

Defendants accepted plaintiff's proposition and a renewal loan was executed on the same property, but upon the terms and conditions specified. Plaintiff's testimony disclosed that it made the requirement of the two $500 payments for the reason it did not consider the security adequate and it did not think it advisable to recommend the renewal signed by only Swartz and his wife. On June 1, 1931, defendants paid neither the first $500 installment of the loan nor the interest due. On July 31, 1931, Mr. Abrahams, national secretary of the plaintiff company, had a conversation with Swartz

in plaintiff's office at Topeka concerning the default. Swartz then offered plaintiff a deed to the mortgaged property in consideration of the cancellation of the debt. This offer plaintiff refused, stating to Swartz, in substance: that he [Swartz], prior to the renewal, had advised plaintiff he had other property and that plaintiff would expect payment in full of the amount due; the mortgaged property was not worth the indebtedness; defendant threatened to hold the property eighteen months unless his proposition was accepted, and defendant advised plaintiff a deficiency judgment would be worthless; Swartz informed him that his information that the mortgaged property was not worth the debt was incorrect. This testimony was corroborated, but we need not dwell upon that fact.

Swartz denied anyone representing plaintiff had told him the mortgaged property was not worth the amount of the debt. The fact remains the two $500 payments were required under the renewed loan.

As heretofore stated this conversation occurred on July 31, 1931. Just ten days thereafter and on August 10, 1931, defendant Swartz and his wife disposed of all other property they owned. It was all free of encumbrance. To their son they conveyed a farm of 200 acres, and to their daughter a residence property in Olathe. Each of the conveyances was for $1 and love and affection. On the trial both conveyances were admitted to be gifts. Notwithstanding the conveyance to the daughter the rentals from that property were for some time paid by the tenants to Mayme Swartz, the wife of the defendant Swartz. For some reason not explained the rentals were later paid to the daughter.

Plaintiff filed suit and obtained mortgage-foreclosure judgment on December 14, 1931, including a deficiency judgment in the event the proceeds of the sale were insufficient to satisfy the debt. The judgment was for the sum of $6,642.72. Plaintiff purchased the property at sheriff's sale for $4,000, that being the best and highest bid. The trial court confirmed that sale on March 19, 1932, and fixed the period of redemption at eighteen months. Execution was had on the deficiency judgment and was returned unsatisfied on March 26, 1932. On the same day the sheriff made that return this action to set aside the conveyance to the daughter was filed. The action was tried and defendants prevailed. Plaintiff appealed and this court reversed the judgment and remanded the case for a new trial, due to trial errors. (*Security Benefit Ass'n v. Swartz,* 141 Kan.

227, 40 P. 2d 433.) In that case the trial judge declined to hear evidence on any issue of fraud except as to the market value of the encumbered property. On the second trial, which is now here for review, the trial judge admitted evidence touching other elements of fraud, but in the course of the trial said:

"I am willing to state into the record that I still believe that if this property had a market value, a market value that was sufficiently ample to take care of this indebtedness, that the matter of intent is wholly immaterial."

We need spend no time in discussion of that statement as an abstract principle of law. Was a sufficiently ample market value established? The trial court expressly found it was. Was the finding supported by the evidence? When the case was here before, we said:

"We cannot measure securities and their adequacy to pay debts by original or replacement costs, but by such values *as can be realized therefrom* at the time in question for the purpose of applying the same toward the payment of the debt." (p. 233.) (Italics inserted.)

Now what does the evidence show that could be realized from the property to apply on the debt? The undisputed record shows the best bid was $4,000. If this property had possessed a market value sufficiently ample to satisfy the indebtedness, just why would defendants have permitted it to be sold at sheriff's sale for $4,000? Plaintiff had advised defendant Swartz it did not want the property but wanted the indebtedness paid. Moreover, if this property had in fact possessed a sufficient market value to discharge the debt it is indeed difficult to conceive how this same court, sitting as a court of equity, would have approved and confirmed the sale at $4,000. If the property possessed a sufficient market value, just why did that court of equity render a deficiency judgment and especially one in the substantial sum of $3,055.01? We may well pursue the statement of the trial court a bit further. Just what was the other evidence concerning the *market* value of this property? During an eighteen-months period of redemption this property was in the hands of real-estate agents, and yet no purchaser was found by them who was willing to pay enough for the property to pay the debt defendants owed plaintiff. That is defendant's own testimony, as well as the testimony of their real-estate agents. Oh, yes, there was evidence of value based on replacement costs, of value on the basis of a price at which the property had been offered for sale from eighteen months to two years prior to August 10, 1931. There was

also evidence of value in excess of the foreclosure judgment provided a purchaser could be found. The trouble with that sort of testimony is it does not prove market value. It was out of market value that plaintiff was obliged to satisfy defendants' debt, and not upon value placed on the property in the event a purchaser could be found when no purchaser was forthcoming. Not a single witness produced admissible evidence that there was a market value of the mortgaged property equivalent to the mortgage debt. One lone witness claimed he had a single offer of such an amount and he was permitted to testify to that fact over plaintiff's objection. He claimed he had an offer of $6,500. That witness was the defendant. He fixed the time of the offer as four or five months before he conveyed the property to his daughter. Yet he admitted that only about ten days before he conveyed the property to her he offered it to plaintiff for the amount of the mortgage. We cannot, however, and need not invade the field reserved to the trial court in weighing evidence or determining the credibility of a witness. Defendant himself made no attempt to show that this single offer (from an unnamed person) was made by an individual who was ready and able to buy, assuming he was willing. Moreover, a single offer of an owner under these circumstances is inadmissible to prove *market* value. In the early case of *St. Joseph & D. C. R. R. Co. v. Orr*, 8 Kan. 419, it was held:

"Evidence of an offer made for land is inadmissible to prove its value. Such testimony is easily manufactured. It is warranted neither on principle nor on authority, and is too dangerous to be tolerated." (Syl. ¶ 9.)

This case was cited and followed by the supreme court of the United States, in *Sharp v. United States*, 191 U. S. 341, 48 L. Ed. 211, in which the grave danger of accepting this sort of evidence was discussed and its acceptance disapproved. For the above and other citations, see *State v. Nelson*, 126 Kan. 1, 266 Pac. 107, in which this early rule was again reiterated and approved.

Could these defendants, while in default on their mortgage and without a market value of the mortgaged property equivalent to the mortgage debt, make gifts to their children of all of their other property and, indeed, the very property the father had in writing agreed to sell in order to pay on the mortgage debt, and not be guilty of at least fraud in contemplation of law? Clearly they could not. In the early case of *Hunt v. Spencer*, 20 Kan. 126, it was held:

"A voluntary conveyance can be sustained as against existing creditors

only when under all the circumstances of the case the property retained by the grantor furnishes reasonable and adequate provision for the discharge of his debts." (Syl. ¶ 3.)

In the same case this court announced a rule which is not difficult to understand. It said:

"A man may give away whatever he sees fit, provided he first pay or make adequate provision for his honest debts." (p. 133.)

From this wholesome doctrine we have not receded nor do we intend to do so in the instant case. In *Hardware Co. v. Semke,* 105 Kan. 628, 185 Pac. 732, it was held:

"The transfer of property by a debtor to his wife without consideration, thereby placing all of his property subject to be taken by creditors beyond the reach of his creditors, amounted to a fraud in law, and the intent of the wife in accepting the transfer is immaterial." (Syl. ¶ 1.)

See, also, *Security Benefit Ass'n v. Swartz,* 141 Kan. 227, 40 P. 2d 433; *Farmers State Bank v. Mitchell,* 143 Kan. 286, 55 P. 2d 423, and cases cited.

Plaintiff also complains concerning the failure of the trial court to make additional special findings of fact. In view of what has been said it is unnecessary to discuss that contention.

Defendants remind us the trial court weighed and determined all questions of fact and found there was neither actual nor constructive fraud. We need not and have not invaded the province of the trial court as a finder of facts on disputed evidence. We hold that under the compctent and undisputed evidence the conveyances were clearly fraudulent in contemplation of law. Two trials and two appeals have been had concerning this controversy. Defendants' liability has been clearly established. No defense has been disclosed and a new trial will serve no purpose. Judgment will therefore be ordered in favor of plaintiff. (G. S. 1935, 60-3317; *Bolinger v. Giles,* 125 Kan. 53, 262 Pac. 1022; *Security Nat'l Bank v. Crystal Ice & Fuel Co.,* 145 Kan. 899, 67 P. 2d 527.) It is so ordered.